UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| JERRY PHELPS, )<br>)<br>        Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>        Respondent. ) | No. 1:05-CV-229<br><br>Chief Judge Curtis L. Collier |

## **MEMORANDUM**

This matter comes before the Court on the motion of *pro se* petitioner Jerry Phelps ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 1).[1] Petitioner filed a memorandum in support of his Petition (Court File No. 1). The United States filed a response to Petitioner's motion (Court File Nos. 5 & 6). Petitioner filed a reply to the United States' response (Court File No. 9) and an amended motion to vacate, set aside, or correct his sentence (Court File No. 11). Several months later, Petitioner filed two more documents, which the Court will interpret to be amendments to his initial Petition (Court File Nos. 12 & 13). The Court finds the materials thus submitted, together with the complete record of the underlying criminal case,[2] conclusively show Petitioner is not entitled to relief on the claims asserted in his

---

[1] Petitioner's motion will be referred to as "Petition."

[2] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:04-CR-41, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

Petition. Accordingly, the Court will decide those matters without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I. <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

The underlying facts supporting Petitioner's guilty plea were set forth in the Agreed Factual Basis and in the Presentence Report ("PSR"). On August 5, 2004, Petitioner pleaded guilty to: Count One of the Indictment, charging him with conspiracy to distribute and possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1) & (b)(1)(B) and Count Seven of the Indictment, charging him with possession of a firearm in furtherance of the drug trafficking crime in violation of 18 U.S.C. § 924(c). (Presentence Report ("PSR") at ¶¶ 1, 7-8). Petitioner stipulated to the following facts in the Agreed Factual Basis (Crim. Court File No. 23):

> On March 6, 2003, the Chattanooga Police Department Special Investigations Unit executed a search warrant at 2011 A. Raulston Avenue in Chattanooga, in the Eastern District of Tennessee. Detectives knocked and announced "Police Search Warrant" at the front door and then forcibly breached the door. Detective Harper found Michael Cal in the living room. Cal had a plastic bag with a small amount of crack cocaine in his pocket. Detective Yates saw and chased Phelps as he ran to the bathroom. Yates saw Phelps flushing what appeared to be crack cocaine down the toilet.
>
> In the master bedroom, Detective Floyd found a Sig Sauer P226 pistol in plain view in a shoe box on top of a dresser. The pistol was manufactured outside the state of Tennessee and traveled in and affected interstate commerce. There were miscellaneous papers in the room with Phelps' name on them. Floyd also found approximately .25 grams of powder cocaine in a bag on top of the dresser.
>
> In another bedroom, Det. Wolff found approximately 3.8 grams of crack cocaine in one plastic bag in the top dresser drawer and $150 in cash in a jacket pocket in the closet. He also found a small bag of marijuana.
>
> Yates read Phelps his Miranda rights, who signed a written rights waiver form and

> admitted he sold crack. He admitted that he goes by the street name "Fella" and that he got his crack from his cousin, Chester Phelps, who goes by "Sugar Bear." Phelps stated that he usually got $50 worth of crack at a time from Sugar Bear. Yates had prior informant info that Fella and SugarBear [sic] were selling cocaine and marijuana from the aforementioned residence.
>
> Phelps was on probation for Aggravated Assault, Burglary, and felony Theft at the time of this offense.
>
> On March 3, 2004, the Chattanooga Police Department Special Investigations Unit executed a search warrant at 1715 A Carson Street in Chattanooga, in the Eastern District of Tennessee, where Phelps was staying. Phelps was not at home (nor was anyone else) at the time the search warrant was executed.
>
> In the living bedroom, Detective Wolff found a loaded Hi-Point 9 mm pistol under the couch. The pistol was manufactured outside the state of Tennessee and traveled in and affected interstate commerce. Detective Dossett found a rent receipt made out to Phelps on a shelf.
>
> In the kitchen, the detectives found approx. 2.1 grams of crack cocaine and approx. .9 grams of powder cocaine in 4 small baggies. They also found digital scales, a bag of marijuana, and a disposable camera.
>
> They also executed a search warrant next door and found approx. 2 grams of crack in the possession of Acquanita Lowe, aka "Big Baby." She is Phelps' cousin. She was advised of and waived her Miranda rights and made statements to police admitting that she was holding the crack for Phelps. She also accurately described the gun that belonged to Phelps, down to the duct tape on the clip, without seeing it first.
>
> Phelps gave a statement later at the police station admitting the crack and powder were his.

During the rearraignment hearing, Petitioner admitted that the information contained in the Factual Basis was true and that he was pleading guilty because he was in fact guilty of the charges (Crim. Court File No. 39, Rearraignment Transcript[3] ("R.T.") at 11-12).

The PSR was prepared and provided to the parties. Since Petitioner entered a guilty plea to

---

[3]The transcript states it was a "Resentencing Hearing"; however, it was the rearraignment.

3

a drug quantity of at least five grams of crack, the probation officer determined the base offense level to be 26, which corresponds with a drug quantity of at least five grams but less than twenty grams of crack (PSR at ¶ 20; U.S.S.G. § 2D1.1 Drug Quantity Table). No enhancements were applied, but a three-level downward adjustment was recommended for acceptance of responsibility, resulting in a total offense level of 23 (PSR at ¶¶ 27-30).

Petitioner was in criminal history category V, resulting in a guideline range of 84 to 105 months on the drug conspiracy conviction (*id*. at ¶¶ 40, 68). Coupled with the 60-month statutory mandatory consecutive penalty on the § 924(c) conviction, the effective guideline range was 144 to 165 months (*id*. at ¶ 68).

Petitioner initially filed *Blakely*-type objections[4] to the PSR disputing the drug quantity and arguing that Petitioner had not admitted any drug quantity. Petitioner also objected to the inclusion of the crack found in Ms. Lowe's possession to determine the base offense level (PSR Addendum). The probation officer responded that Petitioner had pled guilty to a drug quantity of at least five grams, and his offense level was based only on that amount (*id*.). At sentencing, Petitioner "did not object to these calculations or any of the other statements of fact contained in the PSR" (Crim. Court File No. 36, Sentencing Memorandum at 21).

Petitioner was sentenced on January 7, 2005 to a term of imprisonment of 90 months on the conspiracy conviction and a consecutive 60 months on the gun conviction (Court File No. 32). On

---

[4]In *Blakely v. Washington*, 542 U.S. 296 (2004), the United States Supreme Court held that the Sixth Amendment precluded the imposition of a sentence under Washington state's sentencing system based on facts not found by a jury or admitted by the defendant. Accordingly, Defendant filed an objection to the drug quantity attributed to him, arguing since he never admitted to possessing the stated amount of cocaine and there was no jury finding of the amount, it would be illegal to enhance his sentence according to that criteria.

January 12, 2005, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), making the guidelines advisory rather than mandatory. In light of *Booker*, Petitioner sought and was granted resentencing by this Court, which was held on March 4, 2005 (Crim. Court File No. 36 at 3). At resentencing, the Court found the effective advisory guideline range was 144 to 165 months as stated in the PSR. Petitioner was sentenced to 150 months, the same as originally imposed (*id.* at 26). The Court filed a Sentencing Memorandum explaining in detail the Court's findings and its approach to sentencing post-*Booker* (*id.*). *See United States v. Phelps*, 366 F. Supp. 2d 580 (E.D. Tenn. 2005). Petitioner did not file a direct appeal.

Judgment was entered on April 1, 2005 and therefore was considered final on April 11, 2005. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) ("an unappealed federal criminal judgment becomes final ten days after it is entered"). On August 5, 2005, Petitioner timely filed the initial § 2255 motion.[5] In his pending § 2255 motion, Petitioner asserts four claims for relief: (1) no evaluation was conducted to determine Petitioner's competency to enter a guilty plea; (2) Petitioner received constitutionally ineffective assistance of counsel because counsel did not file a direct appeal; (3) there was insufficient evidence to support his conviction; and (4) he is actually innocent. Petitioner also makes a request for materials from the grand jury proceeding. For the reasons stated below, these claims provide no basis for relief.

II.     **STANDARD OF REVIEW**

---

[5]The Court notes the second document filed by Petitioner, titled "Supplemental Motion 28 U.S.C. § 2255" (Court File No. 13) was not timely filed. Petitioner's conviction became final on April 11, 2005, which means he had until April 11, 2006 to file a 2255 motion and/or to file any amendments to such motion. The supplemental motion was not filed until April 19, 2006. Nonetheless, the Court will address the merits of the motion as if it were timely filed.

5

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

One of Petitioner's claims rests on allegations of ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the

right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Gov't of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had

7

no effect on the judgment." *Strickland,* 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697.

### III.    DISCUSSION

Petitioner asserts four grounds upon which he argues the Court should vacate, set aside, or correct his sentence. Petitioner contends (1) because there was no evaluation regarding whether he was competent to enter a guilty plea, his guilty plea was not entered knowingly and voluntarily; (2) he received ineffective assistance of counsel because counsel failed to appeal his sentence after Petitioner allegedly directed him to do so; (3) there was insufficient evidence to support his conviction; and (4) he is actually innocent.

With the exception of a claim of ineffective assistance of counsel, a petitioner procedurally defaults a claim by failing to raise it on direct review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). Petitioner did not appeal his conviction or sentence and only one of his claims contains

any reference to alleged ineffective performance on the part of his attorney. A procedurally defaulted claim may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622; *Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001). Although Petitioner does not explicitly address his default, he does make arguments he is actually innocent. Therefore, the Court will interpret this as an argument to excuse his default.

Petitioner argues he is actually innocent of the crime he was convicted of because he was not the man named in the arrest and search warrant, and he was "set up" by the police (Court File No. 13, Supplemental Motion at 2). A "claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The actual innocence exception is very narrow in scope and requires proof of factual innocence, not just legal insufficiency. *See Bousley,* 523 U.S. at 624 ("It is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency."). To obtain any relief on the basis of an actual innocence claim, Petitioner must show "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, Petitioner must show he did not commit the crimes as charged, not simply that some error in procedure occurred.

Petitioner is unable to show he did not commit the crime as charged because he acknowledged he was guilty of conspiracy to distribute and possess more than five grams of cocaine base and possession of a firearm during a drug trafficking crime when he entered a guilty plea to the

charges. Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Petitioner presents no credible evidence that suggests his representations of guilt during his plea were untruthful, and he is, therefore, bound by his sworn statements.

Since Petitioner's actual innocence claim is without merit, all of Petitioner's claims, except the one for ineffective assistance of counsel, are barred by procedural default. Nevertheless, the Court will proceed to address the merits of Petitioner's claims because Petitioner would not be entitled to relief on his claims even if they had not been procedurally defaulted.

### A. Voluntariness of Guilty Plea

Defendant contends he entered his guilty plea unknowingly and involuntarily because he "did not have a full, complete understanding of the full nature and consequences of the plea taken" due to "his age factor, mental health factors, and lack of full adequate and complete meaningful discussion with [counsel]." (Court File No. 1, Motion to Vacate, Declaration ¶¶1-2). In support of his argument, Petitioner cites a case from the United States Court of Appeals for the Eleventh Circuit regarding mental competence, but makes no attempt to explain why his age hinders his understanding nor what mental health problems he may suffer that would affect his understanding of his case or the nature of the proceedings.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Harris v. Thomas*, 341 F.2d 560, 561 (6th Cir. 1965). A motion that merely states general conclusions of law without supporting facts is without legal merit. Petitioner failed to meet this threshold requirement of providing support for his claims of alleged incompetency, and they provide no basis for relief.

Petitioner attempted to correct this failure by filing a response (Court File No. 9). The only additional fact Petitioner offers to support his claim of incompetency is Petitioner's drug abuse problem, which he states "alters one's thinking and 'comprehension'" and his "choice of drugs <u>does eat away at brain cells</u>" (Court File No. 9 at 2, emphasis in original). However, Petitioner provided no further clinical evidence of any mental health abnormality at the time of his rearraignment or sentencing.

In determining a defendant's competency to enter a guilty plea, the Court considers "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has a 'rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). Competency focuses on whether a defendant has the ability to understand the proceedings, which the Supreme Court has described as "a modest aim." *Id.* at 402.

Further, the Sixth Circuit has stated that "the standard established in *Pate* [*v. Robinson*, 383 U.S. 375, 385 (1966)] for requiring competency hearings prior to trial or the entry of a guilty plea is not merely whether extant evidence raises 'doubt' . . . but whether evidence raises 'bona fide doubt' as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004). As

the Government's response suggests, Petitioner has not demonstrated there was any doubt, let alone "bona fide doubt," as to his competency to enter a guilty plea or that counsel or the Court had any reason to question his competency. The record does not indicate any abnormalities in Petitioner's behavior that would have led counsel or the Court to suspect Petitioner was incompetent either at the time of the offense or during the proceedings.

Other than referencing his drug abuse, Petitioner does not point to any evidence which would have caused anyone to question Petitioner's competency. Many defendants charged with drug related crimes abuse drugs and are fully competent to plead guilty. According to Petitioner's own answers under oath, Petitioner conferred with counsel as to his guilty plea. Petitioner at all times answered the Court in a lucid, coherent and intelligible manner. Petitioner was responsive to the Court's questions throughout the rearraignment hearing and the sentencing hearing and demonstrated at each point that he understood the proceedings. In addition, the "Mental and Emotional Health" section of the PSR states: "There is no indication in the defendant's personal history of any mental health problems. He reports that he has never been evaluated or treated for any psychological problems." (PSR at ¶ 54).

The Court finds no evidence raising a bona fide doubt in this case that Petitioner was incapable of assisting in his defense or that he was incapable of understanding the nature of the proceedings against him. Further, there is no basis upon which to conclude that any mental health professional would have found petitioner incompetent to enter a plea if such a request had been made. This argument is completely unsupported by the record. As such, this claim provides no basis for setting aside Petitioner's plea as involuntary or unknowing. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

### B. Ineffective Assistance of Counsel

Petitioner contends he instructed Counsel to appeal his sentence, and he did not do so (Court File No. 2, p. 4). To show counsel performed deficiently in failing to file a notice of appeal, petitioner must demonstrate either "(1) that the attorney disregarded [petitioner's] instructions to file a notice of appeal, or (2) that the attorney failed to consult with [petitioner] about an appeal when he knew or should have known that [petitioner] might want to appeal." *Higbee v. United States*, 20 F. App'x 465, 466 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)).

The Government has attached an affidavit and letter from Petitioner's counsel during the criminal proceedings, Daniel Ripper (Court File No. 5, Exs. A & B). In the affidavit, counsel avers that he met with Petitioner regarding the possibility of filing an appeal and recommended Petitioner not file an appeal but offered to prepare and file an appeal upon Petitioner's request. (Court File No. 5, Ex. B. at ¶ 4). Petitioner informed his counsel he did not wish to file an appeal (*id*.). According to Petitioner's counsel, Petitioner did not contact him during the remaining ten-day period within which Petitioner could have filed a direct appeal to request such appeal be filed (*id*.). The letter attached was written by Petitioner's counsel to Petitioner to confirm the outcome of the meeting.

Although Petitioner argues he did not receive the letter, Petitioner acknowledges that his counsel consulted with him about whether to file an appeal, and he instructed counsel not to file the appeal (Court File No. 9, Declaration at 1). After the meeting with his attorney, however, Petitioner "heard a jail inmate talking about the 'new Supreme Court Sharpard case'" and decided to write his attorney a letter "with specific instructions to filed [sic] my case for sentence appeal review." *Id*. Petitioner does not state whether he mailed this letter to his attorney nor does he present proof such letter existed.

As the Sixth Circuit noted, "If counsel has consulted with the defendant, counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Higbee*, 20 F. App'x at 466 (citing *Flores-Ortega*, 528 U.S. at 478-79). In light of counsel's affidavit and Petitioner's own admission, Petitioner did not indicate he wanted his counsel to file an appeal at the time they discussed whether to file an appeal. While Petitioner suggests at some point after the meeting he wrote a letter instructing counsel to file an appeal, Petitioner has not presented any evidence he ever mailed the letter or that his counsel received it. His counsel, on the other hand, states that "[a]t no time during the remaining ten-day period within which the defendant was eligible to file a direct appeal did the defendant contact" him "and request that an appeal be filed on his behalf." (Court File No. 5, Exh. B. at ¶ 4). Under these facts, this claim is without merit. Therefore, Petitioner's counsel was not deficient in failing to file a direct appeal nor was Petitioner prejudiced by the omission. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

### C. Insufficient Evidence

Petitioner contends the Court should "reverse and render his case for the failure of the Government to prove any essential elements for each and every count of the indictment." (Court File No. 12 at 1). Specifically, Petitioner argues the Government did not prove "an interstate commerce nexus for the 'gun'" (*id.*), and the Government never proved a conspiracy existed (Court File No. 13, Supplemental Motion, at 2). In conjunction with his insufficient evidence claim, Petitioner challenges the search of his residence on March 3, 2004.

As stated above, Petitioner procedurally defaulted these claims by failing to raise them during his criminal proceedings or in a direct appeal, and Petitioner's claim of actual innocence is

14

not sufficient to excuse such default. However, even if Petitioner's claim were properly before the Court, the claim has no merit because he pleaded guilty to the charges and agreed the factual basis was true, which included facts to support each element for the two convictions.

During Petitioner's rearraignment, the Court explained the government would have to prove beyond a reasonable doubt the following elements:

> The essential elements for Count 1 are as follows: [t]hat the defendant conspired, combined, or agreed with at least one other person to commit the crime of distributing and possessing with the intent to distribute more than 5 grams of a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine, and (2) the defendant knowingly and voluntarily joined the conspiracy.
> With respect to Count 7, the essential elements are that (1) the defendant committed a drug-trafficking offense, (2) the defendant knowingly possessed a firearm, and (3) the defendant possessed that firearm in furtherance of the drug-trafficking offense.[6]

(R.T. at 7-8). Petitioner stated he understood the charge, and he wished to plead guilty to the charge. Since Petitioner did plead guilty to both charges, he is bound by his admissions made under oath. Petitioner is unable to show he did not commit the crimes as charged because he, in fact, acknowledged that he was guilty of conspiracy to distribute and possession with intent to distribute more than five grams of cocaine base and possession of a firearm during a drug trafficking offense when he entered his guilty plea to the charge. Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy. *Blackledge*, 431 U.S. at 73-74. Petitioner's admissions, in turn, negate any arguments that there was insufficient evidence to convict him. Therefore, Petitioner's insufficient-evidence claim will be dismissed for the following two reasons: (1) he did not demonstrate he was actually innocent, and as such, failed to excuse his procedural default; and (2) the record contains sufficient evidence to

---

[6]Petitioner has not submitted any reliable proof that these elements were not present.

support his guilty plea to both charges. Accordingly, the Court finds Petitioner is barred from raising an insufficient evidence claim and not entitled to § 2255 relief on this claim.

Moreover, Petitioner's claim regarding an illegal search and seizure was waived when he entered his plea of guilty unless he can show his guilty plea was involuntary. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979) (guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a § 2255 proceeding). As the Court explained above, the record in this case demonstrates Petitioner's plea was knowing and voluntary. Therefore, Petitioner's voluntary and unconditional plea waived his illegal search and seizure claim.

### D. Grand Jury Proceedings

Petitioner expresses concerns about the evidence presented to the grand jury. Specifically, he asserts "the investigation that ensued, and the searches conducted and the conspiracy strongly suggest that witnesses that testified before the grand jury provided false testimony regarding a conspiracy, then withheld exculpatory evidence, as to probable cause, and that the government had an obligation to present to the grand jury so that a fair and accurate assessment of the testimony could have been made." (Court File No. 13, Supplemental Motion at 5). He also argues the indictment does not contain any facts to substantiate a conspiracy with anyone (*id*.). Petitioner requests the Court to "carefully consider disclosure of the witnesses that testified before the grand jury as well as the transcripts thereof for review." (*id*. at 4). In the alternative, Petitioner requests the Court review the transcripts, *in camera*, to determine the issues raised by him (*id*.).

Because Petitioner entered a guilty plea that was voluntary and intelligent, he cannot collaterally attack the grand jury proceedings or the indictment. *See Curtis v. United States*, No. 87-

5313, 1987 WL 44473, at *1 (6th Cir. Oct. 2, 1987) ("Since [the petitioner's] plea was voluntary and intelligent, he is foreclosed from collaterally attacking the grand jury proceedings or the indictment."); *Tollett,* 411 U.S. 258 at 267. However, Petitioner's arguments regarding the grand jury proceedings appear to be a request for discovery, and as such, the Court will address the request in that manner as well.

Petitioner is not automatically entitled to conduct discovery in a § 2255 proceeding; therefore, he must obtain leave, for good cause shown, from the court to do so. *Clinkscale v. United States*, 367 F. Supp. 2d 1150, 1154 (N.D. Ohio 2005). The general rule is grand jury proceedings are to be kept secret. *In re Antitrust Grand Jury*, 805 F.2d 155, 160 (6th Cir. 1986). The veil of secrecy can be lifted only if a criminal defendant shows the existence of a particularized need for such discovery that outweighs the general rule of grand jury secrecy. *Id.*; *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 221 (1979). Other than a speculative assertion that unidentified witnesses falsely testified before the grand jury and other unsupported assumptions regarding exculpatory evidence, Petitioner has not presented any evidence or facts to support this request. Thus, Petitioner has failed to show the requisite good cause necessary for discovery in a § 2255 proceeding, and he has also failed to meet the higher standard to lift the veil of secrecy of grand jury proceedings. Accordingly, his motion for discovery will be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**. To the extent Petitioner's

arguments regarding the grand jury proceedings were a motion for discovery, that motion will be **DENIED** as well.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[7] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v.*

---

[7]The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

*Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. Therefore, the Court will **DENY** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons the Court relied on to determine a certificate of appealability should not issue, the Court also determines any appeal in this case would not be taken in good faith. It will therefore be **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), any appeal in this matter by Petitioner would not be taken in good faith, and thus Petitioner may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**